# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FORZA TECHNOLOGIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 CV 7905 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| PREMIER RESEARCH LABS, LP and ) | |
| ROBERT J. MARSHALL, individually, ) | |
| ) | |
| Defendants, ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Forza Technologies, LLC ("Forza") sued Defendants Premier Research Labs, LP ("Premier") and Robert J. Marshall, in his personal capacity, for breach of contract and fraud, in violation of state law. Now before the court is Marshall's motion to dismiss Counts I and II of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Marshall argues that the complaint does not allege facts sufficient to hold him personally liable for Premier's actions, as he was merely a limited partner in Premier. For the reasons set out below, the motion is granted, and the claims against Marshall are dismissed.

### I. BACKGROUND

For purposes of the motion to dismiss, the court accepts the allegations in the complaint as true and construes the facts in the light most favorable to Forza. According to the First Amended Complaint, Forza is a Wisconsin limited liability company ("LLC") with its sole office in Illinois. Forza has formulated nutritional supplements for use by athletes, particularly high-school and collegiate wrestlers. Premier is a Texas limited partnership founded by Marshall which is in the business of making and selling nutritional products. Premier is comprised of the

following partners: 1) general partner Texas Supplements, LLC, a Texas LLC controlled by its sole member, Marshall; 2) limited partner HWO A Trust, a Texas trust; and 3) limited partner Marshall. The complaint further alleges that "Marshall directly participates in the operation and control of the business of Premier and leads the public to reasonably believe that he is a general partner and sole owner of Premier." (Am. Compl. ¶ 7.) In addition, the complaint alleges that "[f]rom July 23, 2010 through March 7, 2011, Premier lost its status as a limited partnership under Texas law, but nevertheless continued to operate effectively as the sole proprietorship of Marshall." (*Id.* ¶ 11.)

Forza alleges that it contracted with Premier to supply Forza with nutritional products developed in accordance with Forza's specifications. In January or February of 2011, Forza began discussions with Marshall and Premier about the manufacture of a new line of nutritional and dietary supplements. Marshall represented to Forza that he and Premier could provide Forza with manufacturing, packaging, labeling, and shipping services. Premier and Marshall initially guaranteed that they would supply Forza with products by early December 2011. On or about November 22, 2011, Forza gave Marshall a check for $150,000 for the purchase of 5,000 units of each of Forza's four products.

Although Premier and Marshall had promised to handle all phases of production of the products in-house, they instead required Forza to pay for the use of outside vendors. Forza also approved a price increase, and it paid Premier an additional $215,050 in April 2012. But Premier did not meet the promised deadlines to supply Forza's products, and many of the products it did supply failed to meet Forza's specifications. At least one of the products included trace amounts of DHEA, a banned substance. Forza claims that this contamination put Forza's reputation and ability to sell its products at risk.

2

Forza filed a two-count complaint against Premier and Marshall on October 2, 2012, alleging breach of contract and fraud. After Marshall moved to dismiss the complaint, Forza filed its First Amended Complaint on November 6, 2012. Marshall then moved to dismiss the claims against him in the First Amended Complaint on November 21, 2012.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged in the plaintiff's complaint as true and draws all reasonable inferences from those facts in favor of the plaintiff, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

In addition, to satisfy Federal Rule of Civil Procedure 9(b), which applies to claims of fraud, a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." This is often described as requiring a plaintiff to plead "the who, what, when, where and how" of the alleged fraud. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). For purposes of a motion to dismiss for failure to comply with Rule 9(b), the court takes the allegations in the complaint as true and makes all reasonable inferences in the plaintiff's favor. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

**III. ANALYSIS**

Marshall moves to dismiss Forza's claims against him on the basis that the complaint does not allege facts sufficient to hold him personally liable for Premier's actions. According to Marshall, Premier is a Texas limited partnership, of which he is a limited partner. Texas limited partnerships are governed by the Texas Business Organizations Code ("the Code") (effective January 1, 2010, replacing the Texas Revised Limited Partnership Act ("TRLPA")). Under the Code, a limited partner is not liable to third parties for the obligations of the partnership unless he participates in the control of the business. Furthermore, a limited partner does not participate in the control of the business if he acts as a member or manager of an LLC that is the general partner of the limited partnership. Marshall argues that he participated in Premier's business solely as a member of an LLC and therefore cannot be individually liable to Forza.

## A. Conduct Prior to March 7, 2011

Forza first responds that the complaint alleges that Forza began its negotiations with Marshall at a time when Premier had temporarily lost its limited partnership status, and that at that time, Marshall personally controlled and operated Premier and personally made false representations to Forza. Forza alleges that it began discussions with Marshall in January or February of 2011. Premier did not enjoy active limited partnership status between July 23, 2010, and March 7, 2011. Forza has attached to the First Amended Complaint a notice of "Involuntary Termination" which states that Premier failed to file the periodic report required by § 153.301 of the Code, and that, as a result, it "forfeited its right to transact business in [Texas] for failure to file said periodic report." (Am. Compl. Ex. C (Notice) 4, ECF No. 17-3.) The notice further states that Premier failed to correct the delinquency, and that its certificate of formation was thereby terminated in accordance with § 153.311 of the Code on July 23, 2010. (*Id.*) Premier's

status was not reactivated until March 7, 2011, when it filed a periodic report with the Secretary of State. (Am. Compl. Ex. C (Periodic Report) 5, ECF No. 17-3.) Forza argues that, because the limited partnership was not active, Marshall can be held personally liable for misrepresentations made to Forza in or about January or February of 2011 regarding Premier's ability to perform under an agreement to produce products for Forza.

Drawing inferences in Forza's favor for purposes of the motion to dismiss, Marshall made misrepresentations to Forza about Premier's ability to perform under an agreement. These statements do not in themselves support the breach of contract claim asserted in Count I, however. The actual date of the agreement between the parties is not clear from the complaint, and Forza does not allege that any agreement was in place before March 7, 2011; it alleges only that the parties had begun discussions. Thus, Forza's allegations are insufficient to support a claim for breach of contract by Marshall in his personal capacity insofar as they rely on representations made before March 7, 2011, because the allegations do not support an inference that there was a contract between the parties at that time.

Nor do the allegations support a fraud claim against Marshall. Texas courts recognize that facts involving a contract can sometimes support a fraud claim, but that not every party with a breach of contract claim can successfully maintain a fraud claim.[1] "The courts in Texas have

---

[1] The complaint does not specify which state law allegedly governs the dispute. For purposes of this motion, the court will apply Texas law. The alleged agreement between the parties was apparently created through the parties' oral and written communications; the court has not been provided with a written contract. In the absence of a choice-of-law provision in a contract, Illinois courts apply the choice-of-law rules of the forum state. *Costello v. Liberty Mut. Fire Ins. Co.*, 876 N.E.2d 115 (Ill. App. Ct. 2007). Illinois uses the "most significant contacts" test to determine which law to apply. *Id.* Courts consider five factors in determining the applicable law in contract cases: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998). Here, Texas appears to have the most significant relationship with the transactions at issue. Although Forza is located in Illinois, production of the products—the subject matter of the contract—occurred in Texas, and Forza's representatives traveled to Premier's Texas office in

5

often rejected attempts to make fraud cases out of simple actions for breach of contract." *Levine v. Loma Corp.*, 661 S.W.2d 779, 783 (Tex. App. 1983) (collecting cases). It is not enough to allege that a promise was broken. "For a promise to do something in the future to constitute actionable fraud, it is necessary that the promise be made with the intent at the time that it would not be performed, and with intent, design, and purpose of deceiving." *Id.* (quoting *Reynolds v. Steves*, 356 S.W.2d 200, 202 (Tex. Civ. App. 1962)). The elements of common-law fraud in Texas are: (1) a material representation that (2) was false; (3) the speaker knew the representation was false or made it recklessly without any knowledge of the truth; (4) the speaker made the representation intending that the plaintiff rely upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff was injured as a result. *Wal-Mart Stores*, 52 S.W.3d at 727. Moreover, as noted above, claims of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). This means that the plaintiff must, at a minimum, provide the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

Here, even construing the allegations in the complaint in Forza's favor, the court cannot infer that Marshall made false representations regarding Premier's capacity to perform under an agreement during January or February 2011. Forza alleges that those representations included the fact that Marshall had a Ph.D. (Am. Compl. ¶ 12), that Premier had the equipment required to produce Forza's products (*Id*. ¶ 15), that Premier had the raw material required to produce the products (*Id*. ¶ 17), that Premier was able to package and label the products (*Id*. ¶ 18), and that

---

November 2011, and gave Premier a check. (Am. Compl. ¶ 26.) The court notes, however, that the elements of common-law fraud are the same in Illinois and Texas. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001); *Bd. of Educ. of City of Chi. v. A, C & S, Inc*., 546 N.E.2d 580, 591 (Ill. 1989)).

Premier had the equipment required to do the packaging in-house (*Id.* ¶ 24). Taking the allegations in the complaint as true, these statements were material false representations about the existing state of affairs at Premier, they were made to induce Forza to enter into an agreement with Premier, and Forza relied on them to its detriment in continuing to conduct business with Premier. But Forza has not pleaded the time and place the representations were made, as required by Rule 9(b), and the court has no basis upon which to infer that they were made before March 7, 2011. Thus, the allegations in the complaint are insufficient to support a claim of fraud against Marshall in his personal capacity.

The court further notes that the claims against Marshall in his personal capacity for actions he took before March 7, 2011, fail for another reason—one which may make it difficult for Forza to successfully re-plead these claims. Having reviewed the Code in detail, the court concludes that because Premier's limited partnership status was reinstated by the Texas Secretary of State, the fact that its status was inactive between July 2010 and March 2011 does not allow personal liability to be imposed on Marshall for obligations incurred during that period.

Under Texas law, a person becomes a limited partner on "the date on which the limited partnership is formed." Tex. Bus. Orgs. Code Ann. § 153.101. The rights of limited partners are created by the certificate of formation filed with the Secretary of State. *Id.* § 153.105. Texas limited partnerships are required to file periodic reports under the Code. *Id.* § 153.301. Failure to comply with these reporting requirements leads to a forfeiture of the limited partnership's right to transact business in Texas. *Id.* § 153.307. The forfeiture of a limited partnership's right to transact business, however, does not "prevent the limited partnership from defending an action, suit, or proceeding." *Id.* § 153.309(b)(2); *Manning v. Enbridge Pipelines (E. Tex.) L.P.*, 345 S.W.3d 718, 723 (Tex. App. 2011).

The Secretary of State may terminate the certificate of formation of a limited partnership if it forfeits its right to transact business under § 153.307 and fails to revive that right within a prescribed period of time. Tex. Bus. Orgs. Code Ann. § 153.311. Both the language of the Code and the pronouncements of Texas courts suggest, however, that although failure to comply with periodic reporting requirements may result in the termination of a limited partnership's certificate of formation, it does not subject a limited partner to liability for the obligations of the partnership. Section 153.311 of the Code, cited in the notice attached as an exhibit to the First Amended Complaint, states as follows:

> Sec. 153.311. TERMINATION OF CERTIFICATE OR REVOCATION OF REGISTRATION AFTER FORFEITURE. (a) The secretary of state may terminate the certificate of formation of a domestic limited partnership, or revoke the registration of a foreign limited partnership, if the limited partnership:
>
>> (1) forfeits its right to transact business in this state under Section 153.307; and
>> (2) fails to revive that right under Section 153.310.
>
> . . .
>
> (d) On termination or revocation, the status of the limited partnership is changed to inactive according to the records of the secretary of state. *The change to inactive status does not affect the liability of a limited partner.*

*Id*. § 153.311 (emphasis added). Thus, the Code specifically states that termination of the certificate of formation does not expose a limited partner to liability.

In *Manning*, a Texas appellate court noted that the implications of a limited partnership's temporary lack of capacity to transact business for the liability of a limited partner presented a question of first impression. The court reasoned, by analogy, that in the context of corporations who lose their corporate privileges because of a tax reporting delinquency, once the privileges are reinstated, the revived rights date back to the point to delinquency. "Revival reinstates all rights 'as if the disability had never existed.'" *Manning*, 345 S.W.3d at 723 (quoting *G. Richard*

8

*Goins Constr. Co. v. S.B. McLaughlin Assocs.*, 930 S.W.2d 124, 128 (Tex. App. 1996)). The court held that, similarly, with respect to a limited partnership, a "temporary lack of capacity [was] moot" when the right to transact business was restored. *Id.*

This approach is consistent with the general reluctance of Texas courts to impose liability on a limited partner for failure to comply with the requirements for formation of a limited partnership, such as filing a partnership agreement with the Texas Secretary of State. Texas courts have held that where there has been "substantial" compliance with the statutory filing requirements, limited partners receive limited liability protection. *See Laney v. Comm'r of Internal Revenue*, 674 F.2d 342, 347-48 (5th Cir. 1982) (interpreting the Texas Uniform Limited Partnership Act); *Shindler v. Marr & Assocs.*, 695 S.W.2d 699, 702-04 (Tex. App. 1985) (interpreting the Texas Uniform Limited Partnership Act); *Garrett v. Koepke*, 569 S.W.2d 568, 570-71 (Tex. Civ. App. 1978) (interpreting the TRLPA); *Voudouris v. Walter E. Heller & Co.*, 560 S.W.2d 202, 207-08 (Tex. Civ. App. 1977) (interpreting the Texas Uniform Limited Partnership Act). The Code also suggests that such deficiencies can be cured: it states that a person who erroneously believes in good faith that they are a limited partner is not liable as a general partner if, "within a reasonable time after ascertaining the mistake, the person . . . causes a certificate of formation . . . to be signed and filed." Tex. Bus. Orgs. Code Ann. § 153.106(1).

Based on the language of the Code and the case law discussed above, the court concludes that Premier's failure to satisfy the periodic reporting requirements for a Texas limited partnership did not subject Marshall to liability for Premier's actions during the time when its limited partnership status was inactive.

### B. Conduct after March 7, 2011

Forza argues that Marshall can be held accountable for conduct that occurred even after Premier's limited partnership status was reinstated, because he personally operated and controlled Premier. Title 4 of the Code governs limited partnerships. General partners in a limited partnership have joint and several personal liability for the debts and obligations of the partnership. Tex. Bus. Orgs. Code Ann. § 153.152. Limited partners, however, are largely protected from such liability. Regarding the liability of limited partners, the Code states:

> Sec. 153.102. LIABILITY TO THIRD PARTIES. (a) A limited partner is not liable for the obligations of a limited partnership unless:
>
>> (1) the limited partner is also a general partner; or
>>
>> (2) in addition to the exercise of the limited partner's rights and powers as a limited partner, the limited partner participates in the control of the business.
>
> (b) If the limited partner participates in the control of the business, the limited partner is liable only to a person who transacts business with the limited partnership reasonably believing, based on the limited partner's conduct, that the limited partner is a general partner.

*Id.* § 153.102.

At first blush, it appears that Marshall may be liable for Premier's obligations because, according to the allegations in the complaint, he controlled Premier, and Forza reasonably believed that he was a general partner. But even when a limited partner participates in the control of a business, his liability is limited under the Code as follows:

> Sec. 153.103. ACTIONS NOT CONSTITUTING PARTICIPATION IN BUSINESS FOR LIABILITY PURPOSES.
>
> For purposes of this section and Sections 153.102, 153.104, and 153.105, a limited partner does not participate in the control of the business because the limited partner has or has acted in one or more of the following capacities or possesses or exercises one or more of the following powers: (1) acting as: . . . (E) *a member or manager of a limited liability company that is a general partner of*

>     *the limited partnership*; . . . (3) consulting with or advising a general partner on any matter, including the business of the limited partnership; (4) acting as surety, guarantor, or endorser for the limited partnership, guaranteeing or assuming one or more specific obligations of the limited partnership, or providing collateral for borrowings of the limited partnership[.]

*Id.* § 153.103 (emphasis added).

The statutory provision stating that a limited partner does not become liable as a general partner by acting as an officer of a corporate general partner was enacted in response to a 1975 Texas Supreme Court decision. *See Delaney v. Fid. Lease Ltd.*, 526 S.W.2d 543 (Tex. 1975). In *Delaney*, the Texas Supreme Court held that limited partners became liable as general partners by acting as officers of the corporate general partner, because it was "difficult to separate their acts for they were at all times in the dual capacity of limited partners and officers of the corporation." *Id.* at 545. In response, the Texas legislature amended the TRLPA to overrule *Delaney*'s holding that acting as an officer or director of a corporate general partner could subject a limited partner to liability. *Isaminger v. Gibbs*, No. 05-99-00978-CV, 2000 WL 898867, at *4 (Tex. App. 2000) (reviewing legislative history). That provision of the TRLPA is now incorporated into § 153.103 of the Code. Thus, insofar as Forza argues that Marshall is liable because he controlled Premier, and because he acted "in the dual capacity of" a limited partner and an officer, the argument has been foreclosed by the Texas legislature.

Forza argues that Marshall's use of an LLC as a general partner in structuring Premier is a "shell game," and that Marshall is impermissibly using the corporate form to hide from liability for his personal actions. But the use of corporate entity general partners to shield individuals from liability is common in Texas and is explicitly contemplated by the Code. Such LLC entities are often formed for the sole purpose of serving as general partner of a limited partnership, and the Code allows a limited partner to act as a member or manager of an LLC

11

general partner. *See* Elizabeth S. Miller, *Are There Limits on Limited Liability? Owner Liability Protection and Piercing the Veil of Texas Business Entities*, 43 Tex. J. Bus. L. 405, 406 (2009).

Texas courts have stated that, when an individual is both a limited partner and the sole owner of an LLC general partner, the appropriate inquiry is whether the corporate veil can be pierced so as to submit the individual to liability in his role as the shareholder of the LLC. *Seidler v. Morgan*, 277 S.W.3d 549, 558 n.5 (Tex. App. 2009); *see also Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 499-500 (Tex. App. 2002) (rejecting the trial court's veil-piercing analysis of a limited partnership because "there is no veil that needs piercing . . . because the general partner is always liable for the debts and obligations of the partnership to third parties"). Having determined that Marshall cannot be subjected to liability for his role as a limited partner, the court thus turns to the question of whether he can be held liable for his role as the manager-member of Premier's general partner, Texas Supplements, LLC. Forza has not sued Texas Supplements, LLC, although that entity could, according to the Code, be held liable as a general partner for Premier's debts and obligations. *See* Tex. Bus. Orgs. Code Ann. § 153.152.

Title 3 of the Code governs LLCs. In general, a member or manager of an LLC is not liable for the obligations of the LLC, unless the company's agreement provides otherwise. *Id.* §§ 101.113; 101.114. There is fairly minimal case law in Texas addressing when a member or manager of an LLC may be held liable for the obligations of the LLC through a veil-piercing approach, and the Code does not set out any requirements for piercing the LLC veil. Texas courts have generally relied on corporate veil-piercing principles when determining whether veil piercing is appropriate in the LLC context. *See, e.g.*, *Haferkamp v. Grunstein*, No. 11-10-00194-CV, 2012 WL 1632009, at *6 (Tex. App. May 10, 2012) ("Texas courts have applied to LLCs

the same state-law principles for piercing the corporate veil that they have applied to corporations."); *Pinebrook Props.*, 77 S.W.3d at 500-01 (relying on corporate veil piercing analysis in deciding whether to pierce LLC veil); *In re Moore (Cadle Co. v. Brunswick Homes, LLC)*, 379 B.R. 284 (Bankr. N.D. Tex. 2007) (stating that whether an entity is a corporation or an LLC is a "distinction without a difference" for purposes of veil piercing).

Under Texas's law of corporations, officers and shareholders are generally not liable for the actions of the corporation. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Shareholder liability for corporate wrongdoing "exists only in extremely limited and statutorily defined circumstances." *Seidler*, 277 S.W.2d at 557. The relevant inquiry for corporate veil-piercing appears in § 21.223 of the Code:

> § 21.223. LIMITATION OF LIABILITY FOR OBLIGATIONS. (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber of the corporation, may not be held liable to the corporation or its obligees with respect to:
> 
> . . .
> 
> > (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory;
> 
> . . .
> 
> (b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate *caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud* on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

Tex. Bus. Orgs. Code Ann. § 21.223 (emphasis added). Thus, to pierce the corporate veil under the Code, a plaintiff must allege that the LLC was used for the purpose of perpetrating a fraud on

13

the plaintiff, for the direct personal benefit of the member-manager of the LLC. *Seidler*, 277 S.W.3d at 557. Failure to comply with corporate formalities is not a factor considered in the veil-piercing analysis. *Pinebrook Props.*, 77 S.W.3d at 499.

To pierce the corporate veil, Texas courts have looked for a direct connection between the alleged fraud and a personal benefit to the individual shareholder. For example, in *Farr v. Sun World Sav. Ass'n*, 810 S.W.2d 294 (Tex. App. 1991), a mortgage company shareholder and president fraudulently obtained the proceeds of a pledged promissory note. The court found the direct personal benefit requirement for veil piercing was met because the shareholder used part of the proceeds of the note to pay his personal loans. *Id.* at 298. In *In re Houston Drywall, Inc. (West v. Seiffert)*, a bankruptcy court concluded that an LLC general partner of a limited partnership was a "sham corporation" and that its managers were personally liable for the fraudulent activities of the limited partnership, when the LLC was employed to fraudulently transfer the limited partnership's assets to "fleece unknowing limited partners" and creditors. Bankruptcy No. 05-95161-H4-7, Adversary No. 06-03415, 2008 WL 2754526, at *32-33 (Bankr. S.D. Tex. Jul. 10, 2008). In contrast, in *Rutherford v. Atwood*, although a corporation's sole shareholder and officer used corporate funds for personal and family expenses such as car payments, a Texas appellate court found the evidence insufficient to satisfy the direct personal benefit requirement because the personal use of the funds was not related to the transaction challenged in the case. No. 01-00-0113-CV, 2003 WL 22053687 (Tex. App. Aug. 29, 2003); *see also Seidler*, 277 S.W.3d at 557 (refusing to pierce corporate veil even though the individual defendants controlled a limited partnership and fully owned the LLC general partner).

In this case, the First Amended Complaint alleges that Marshall made false statements to Forza about Premier's capacity to supply Forza's products, and that Marshall led Forza to

14

believe that he owned Premier. The complaint also alleges that Marshall signed documents on behalf of Premier, sometimes in his own capacity. But there are no allegations that Marshall personally made any use of payments obtained from Forza or that the actions alleged in the complaint were undertaken primarily for his direct personal benefit. Failing to sign documents as an officer of the LLC rather than as an individual shows a disregard for corporate structure, but that is not a factor considered in the veil-piercing analysis. *See, e.g.*, *Pinebrook Props.*, 77 S.W.2d at 501. Therefore, the allegations in the complaint fail to satisfy the statutory prerequisites of § 21.223 to allow the imposition of personal liability on Marshall as the shareholder and manager of Premier's LLC general partner.

## IV. Conclusion

Because the allegations in the complaint are insufficient to state a claim against Marshall in his personal capacity, Marshall's motion to dismiss Counts I and II of the First Amended Complaint is granted. Forza may move for leave to amend its complaint pursuant to Rule 15(a)(2) if it can show good cause for doing so. In briefing a motion for leave to amend, Forza should explain why it has named the parties required to hold Marshall liable for the obligations of Premier and how the facts alleged are sufficient to satisfy the requirements of the Code provisions discussed in this opinion, as well as the requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6).

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 12, 2013