# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LK NUTRITION, LLC, | ) |
|                 Plaintiff, | ) 12 CV 7905 |
| v. | ) Magistrate Judge Young B. Kim |
| PREMIER RESEARCH LABS, LP, | ) |
|       Defendant and Counterclaimant, | ) |
| v. | ) |
| LK NUTRITION, LLC, LEE KEMP & MIA SCHEID, | ) |
|       Counterclaim Defendants. | ) |
| MIA SCHEID & FITNESS ARTS, | ) |
|       Counterclaimants, | ) |
| v. | ) |
| PREMIER RESEARCH LABS, LP, | ) |
|       Counterclaim Defendant, | ) |
| and | ) |
| ROBERT J. MARSHALL, | ) July 21, 2015 |
|       Third-Party Defendant. | ) |

## MEMORANDUM OPINION and ORDER

In April 2015 Defendant Premier Research Labs, LP ("PRL") deposed two of Plaintiff LK Nutrition, LLC's expert witnesses regarding the expert reports they

submitted on LK Nutrition's behalf. LK Nutrition billed PRL for the time its experts spent in connection with those depositions, but PRL declined to pay. Invoking Federal Rule of Civil Procedure 26(b)(4)(E)(i), LK Nutrition now moves this court for an order compelling PRL to pay the experts' fees and expenses in full. For the following reasons, the motion is granted in part and denied in part:

## Background

This diversity suit centers on a commercial dispute between two companies involved in the manufacturing of nutritional products. According to the submissions filed in connection with the current motion, in March 2015 LK Nutrition served the reports of two expert witnesses. Gregory Sam provided opinions regarding PRL's alleged manufacturing of contaminated nutritional supplements and Paul Duggan provided opinions with respect to LK Nutrition's damages. After the reports were filed, PRL sought to depose the two experts and did so on April 10 and April 17, 2015, respectively. The following month, LK Nutrition sent PRL invoices it had received from Sam and Duggan. Sam's invoice reflects a total of $5,781.28, representing the time he spent preparing for and attending the deposition at an hourly rate of $450, along with expenses associated with his travel from Philadelphia to Chicago to attend the deposition. (R. 224, Pl.'s Mot. Ex. 1.) Duggan's invoice reflects a total of $6,000 for the 12 hours he spent preparing for and attending the deposition, at a rate of $500 per hour. (Id. Ex. 2.)

According to PRL, after it received the invoices it conferred with LK Nutrition and offered to reimburse Sam and Duggan at the rates specified with the

exception of the time the experts spent preparing for the depositions or reviewing the deposition transcripts. LK Nutrition declined the offer and filed the current motion, seeking to compel PRL to pay both deposition invoices in full.

**Analysis**

LK Nutrition argues that Rule 26(b)(4)(E)(i) requires PRL to pay its experts' deposition expenses in full, including the time spent preparing for the deposition beforehand and reviewing transcripts afterwards. In its response to the motion PRL argues that there is a general rule in this district against requiring the deposing party to reimburse a deposed expert for his preparation time, subject to exceptions that it argues are not applicable here.[1] PRL also argues that Duggan's hourly rate of $500 is unreasonable and should be reduced to $300, which is the rate PRL's expert charged for similar services.

**A.     Reimbursement of the Experts' Deposition Preparation Time**

Rule 26(b)(4)(E)(i) provides that "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (1) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A)," which allows the deposition of any expert whose opinion may be presented at trial. As reflected in the parties' stances here, there has been some division over whether Rule 26(b)(4)(E)(i)'s reference to "time spent in responding to discovery" encompasses time the expert spends preparing to be deposed. *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 3d § 2034 at

---

[1]  Nowhere in its submission does PRL object to reimbursing the experts for their travel expenses or for their time spent in the depositions.

136-38 (3d ed. 2010). Up until the early 2000's, many cases from this district described a "general rule" against awarding fees for experts' deposition preparation time, unless the case was especially complex or there was a long time lapse between the report's issuance and the expert's deposition. *See, e.g., Fait v. Hummel*, No. 01 CV 2771, 2002 WL 31433424, at *4 (N.D. Ill. Oct. 30, 2002); *Royal Maccabees Life Ins. Co. v. Malachinski*, No. 96 CV 6135, 2000 WL 1377111, at *6 (N.D. Ill. Sept. 25, 2000); *M.T. McBrian, Inc. v. Liebert Corp.*, 173 F.R.D. 491, 493 (N.D. Ill. 1997); *McClain v. Owens-Corning Fiberglas Corp.*, No. 89 CV 6226, 1996 WL 650525, at *3 (N.D. Ill. Nov. 7, 1996); *Rhee v. Witco Chem. Corp.*, 126 F.R.D. 45, 47-48 (N.D. Ill. 1989). But none of these cases identify this "general rule's" origin or provide any extensive rationale, although one court described an expert's deposition as being "in part a dress rehearsal for his testimony at trial" and reasoned that "[o]ne party need not pay for the other's trial preparation." *See Rhee*, 126 F.R.D. at 47.

More recently, the tide has begun to turn toward a general acceptance in this district that an expert's preparation time counts as "time spent in responding to discovery" within the meaning of Rule 26(b)(4)(E)(i). That shift appears to have begun with *Collins v. Village of Woodridge*, 197 F.R.D. 354, 357-58 (N.D. Ill. 1999). There, Judge Kennelly reasoned that "[t]ime spent preparing for a deposition is, literally speaking, time spent in responding to discovery" as set forth in the rule. *Id.* at 357. He observed that the rule had been amended in 1993 to reduce the costs associated with expert depositions, and noted that in keeping with that goal, it makes sense "to permit the expert to be compensated by the opposing party for the

4

time reasonably necessary to refresh the expert's memory regarding the material reviewed and the opinions reached." *Id.* at 357-58. Eight years later, in *Waters v. City of Chicago*, 526 F. Supp. 2d 899, 900-01 (N.D. Ill. 2007), Judge Shadur endorsed Judge Kennelly's reasoning and wrote that the "literal language" of the rule reflects the idea that the party who chooses to depose an opponent's expert witness "has created a need for that witness to prepare twice—once for the deposition and then again for his or her trial testimony—so that no unfairness is involved" in requiring the deposing party to compensate the expert for preparation time.

In line with *Collins* and *Waters*, for the last 15 years many cases to have addressed this issue in this district have described allowing compensation for an expert's deposition preparation time as being the "majority view" or have otherwise taken for granted that Rule 26(b)(4)(E)(i) mandates such compensation. *See, e.g., Goldberg v. 401 N. Wabash Venture LLC*, 09 CV 6455, 2013 WL 4506071, at \*5 (N.D. Ill. Aug. 23, 2013); *Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 956 (N.D. Ill. 2012); *Chicago United Indus. Ltd. v. City of Chicago*, No. 05 CV 5011, 2011 WL 4383007, at \*1 (N.D. Ill. Sept. 20, 2011); *Catapult Commc'ns Corp. v. Foster*, 06 CV 6112, 2010 WL 659075, at \* 2 (N.D. Ill. Feb. 19, 2010); *Profile Prods., LLC v. Soil Mgmt. Techs., Inc.*, 155 F. Supp. 2d 880, 886 (N.D. Ill. 2001). And although the Seventh Circuit has not waded into these waters in any depth, it has approved at least one district court decision allowing an expert to

5

recoup deposition preparation expenses under Rule 26(b)(4)(E)(i). *See Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 852 (7th Cir. 2012).

This court accepts generally what has emerged as the majority position that Rule 26(b)(4)(E)(i)'s reference to "time spent in responding to discovery" can be read to encompass the expert's deposition preparation time. But it is also important to note, as alluded to in *Collins*, that the purpose of that compensation shift is to ensure that the party benefiting from the expert's time is the party who pays for it. For example, it is easy to see how the deposing party should be on the hook for a reasonable amount of time the expert spends refreshing his or her memory before the deposition, because that time was made necessary by the deposing party and because it is likely to pay off in the form of a more efficient and productive deposition. *Cf. Collins*, 197 F.R.D. at 357 (noting that allowing the expert to refresh his or her recollection is in keeping with the 1993 rule amendment's goal of cutting deposition costs). In other words, because that preparation time inures primarily to the benefit of the deposing party, fairness dictates that the deposing party should be the one to pay for it. On the other hand, it is harder to see how the pre-deposition time an expert spends strategizing with the retaining party's attorneys can be construed as primarily benefiting the deposing party. Because those strategy sessions are typically meant primarily to protect the retaining party's interests, it is arguable that such time is more akin to the retaining party's own trial preparation rather than its response to discovery within the meaning of Rule 26(b)(4)(E)(i). *Cf.*

*Waters*, 526 F. Supp. 2d at 901 (excluding from reimbursement expert's time spent in conversation with retaining party's counsel before deposition).

Intertwined with these concerns is the requirement that the party seeking to recoup the expert's costs demonstrate that the amount of time spent in preparing for the deposition was reasonable. *See Gwin v. American River Transp. Co.*, 482 F.3d 969, 975 (7th Cir. 2007) (noting that rule's mandatory language is tempered by the limitation to payment of reasonable fees). To determine whether an expert's preparation time was reasonable, courts in this district have looked "to the preparation time in relation to the deposition time, and the nature or complexity of the case, to establish a reasonable ratio of preparation time to actual deposition time for the case." *Se-Kure Controls*, 873 F. Supp. 2d at 956 (internal quotation omitted). Courts have approved of a 1:1 ratio up to a 3:1 ratio depending on the nature of the required document review, breadth of the expert's involvement, and difficulty of the issues. *See Goldberg*, 2013 WL 4506071, at *6; *Chicago United Indus.*, 2011 WL 4383007, at *2. Also relevant is how the expert spent his time and the specificity with which the expert describes that time in the invoice. As the *Collins* court put it, "[i]t is not our intention to allow the experts to seek compensation for reinventing the wheel," but rather to require the deposing party to bear the cost of the time reasonably necessary for the expert to refresh his recollection. 197 F.R.D. at 358. And "[i]n the absence of a sufficiently detailed explanation of the appropriateness of the time spent on deposition preparation," the

7

court may deny reimbursement. *SP Techs., LLC v. Garmin Int'l Inc.*, 08 CV 3248, 2014 WL 300987, at *8 (N.D. Ill. Jan. 10, 2014).

Here, LK Nutrition argues that the amount of time Sam and Duggan spent preparing for their depositions is reasonable because their ratios of preparation to deposition time are approximately 0.5:1 (accounting for the entirety of the deposition day, rather than time spent on the record at the deposition). PRL argues that reimbursing the experts for all of their preparation time is unwarranted because their invoices provide no detail about how they spent their preparation time. It points out that when Duggan was asked during his deposition how he prepared for the day, he said that he "reread parts of my expert report, I looked again at the Ripley report, I met with counsel this morning, had a cup of coffee before we came over here." (R. 227, Resp. Ex. D, Duggan Dep. at 50:1-5.) Duggan testified that he spent his time between 8:45 and just before 10:15 that morning meeting with counsel, cleaning up some office issues, getting coffee, and walking to the deposition. (Id. Ex. D, Duggan Dep. at 51:5-11.) Similarly, Sam testified that to prepare for his deposition, he reviewed his report, reviewed reference documents, and spoke to LK Nutrition's attorneys. (Id. Ex. C, Sam Dep. at 43:20-44:12.) LK Nutrition responds that because it views its experts' preparation time as "modest," they should not have to provide any detail about how those hours were spent beyond the "block billing" reflected in the experts' invoices. (R. 228, Reply at 3-4.)

Although this court recognizes that the experts' preparation time falls within the ratios of preparation to deposition time that in some cases have warranted

8

reimbursement, it agrees with PRL that LK Nutrition (or its experts) has not done enough to demonstrate how that time was spent to satisfy the court that it was reasonably spent in responding to discovery within the meaning of Rule 26(b)(4)(E)(i). Even courts that have viewed payment for deposition preparation as mandatory under Rule 26(b)(4)(E)(i) have excluded fees where the experts do too little to justify the amount of time spent preparing. *See, e.g., Profile Prods.*, 155 F. Supp. 2d at 887; *Collins*, 197 F.R.D. at 358. Unsupported assertions regarding that time are insufficient, because "[t]o simply take the adverse party's unsupported word for the amount of preparation time involved . . . is to hand it a tool of oppression to misuse." *Profile Prods.*, 155 F. Supp. 2d at 887. Here, the experts' invoices simply list "deposition prep" or "preparation with counsel," without making any attempt to explain what that preparation entailed. (R. 224, Pl.'s Mot. Exs. 1 & 2.) By the experts' own admissions, some of their preparation time was spent conferring with LK Nutrition's attorneys or getting coffee. That time should be excluded, *see Waters*, 526 F. Supp. 2d at 901, but neither their invoices nor LK Nutrition's submissions with its motion provide enough detail to allow the court to determine exactly how much of the preparation time they billed was devoted to those tasks.

"In general, where the parties offer little evidence to support their positions, the court may use its discretion in determining the reasonableness of the charged fee." *Se-Kure Controls*, 873 F. Supp. 2d at 957 (quotation omitted). Here the experts offered little to no detail to describe how they spent their preparation time,

what documents they reviewed, or why the hours spent were necessary. LK Nutrition has made no attempt to show that the time spent is reflective of the complexity of the case or the breadth of the experts' involvment. Given the absence of detail in Sam's invoice, the court finds that his reimbursable preparation time should be reduced by one-half from 3.5 hours to 1.75 hours. Based on the similar absence of detail in Duggan's invoice, coupled with his admission that at least 1.5 hours of his preparation time was spent for LK Nutrition's benefit and to have a cup of coffee, the court finds that his reimbursable preparation time should be reduced from 4 hours to 2 hours.

## B. Reasonableness of Duggan's Hourly Rate

PRL also objects to the motion to compel on the basis of its assertion that Duggan's $500 hourly rate is unreasonable. The burden of showing that an expert's rate and fee are reasonable lies with the party seeking reimbursement. *Se-Kure Controls*, 873 F. Supp. 2d at 955. The court weighs the following factors in determining whether an expert's rate is reasonable:

> (1) the expert's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually being charged to the party that retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Id*. The fee being charged to the retaining party may be a particularly important factor, given that the Seventh Circuit has described "willingness to pay" as "the best

guarantee of reasonableness." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

PRL argues that LK Nutrition has not met its burden of showing that Duggan's rate is reasonable. According to it, Duggan's credentials and expert experience are insufficient to justify his rate. PRL points out that its own expert, who holds a higher degree and has published more articles in the relevant field, charges only $300 per hour. This court agrees that LK Nutrition has done little to justify Duggan's hourly rate beyond relying on the fact that it is willing to pay Duggan at the rate requested here. Although in its reply brief it addresses the reasonableness factors and makes assertions as to why they fall in Duggan's favor, it has not submitted any evidence to back up its assertions with respect to the prevailing rate charged by other experts in similar cases, what Duggan has charged in other cases, or how his training or expertise justifies the charged rate. But the court is sensitive to LK Nutrition's assertion that requiring it to engage in a market rate comparison or compile additional evidence under these circumstances would be unreasonable. As it points out, PRL seeks to have the charged rate reduced from $500 to $300, meaning that what is at stake given the reduced hours the court is awarding amounts to a difference of $2,000. Accordingly, the court agrees that LK Nutrition's willingness to pay Duggan the $500 rate is the most important factor, and declines to reduce his charged rate under the circumstances here.

**Conclusion**

For the foregoing reasons, LK Nutrition's motion is granted in part and denied in part. The motion is denied to the extent that LK Nutrition seeks full compensation for the entirety of the fees charged in its experts' invoices. As explained above, the court finds that the reasonable preparation time for Sam is 1.75 hours rather than 3.5 hours and for Duggan the reasonable preparation time is 2 hours rather than 4. Accordingly, PRL is ordered to reimburse Sam for $4,993.78, representing the 7 hours of deposition time, 1.75 hours of preparation time, and travel expenses. PRL is ordered to pay Duggan $5,000, representing 8 hours of deposition time plus 2 hours of preparation time at an hourly rate of $500.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**