**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LK NUTRITION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-07905 |
| | ) | |
| v. | ) | Hon. Joan B. Gottschall |
| | ) | |
| PREMIER RESEARCH LABS, LP | ) | Hon. Young B. Kim |
| | ) | |
| Defendant and | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| LK NUTRITION, LLC, | ) | |
| LEE KEMP and MIA SCHEID | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |
| | ) | |
| -------------------------------------------------- | ) | |
| | ) | |
| MIA SCHEID and FITNESS ARTS, | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PREMIER RESEARCH LABS, LP | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBERT J. MARSHALL | ) | |
| | ) | |
| Third-party Defendant. | ) | |

**DEFENDANTS' MEMORANDUM
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

I.      **Legal Standard for Summary Judgment.**

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, Courts are required to draw all reasonable inferences from the evidence in favor of the party opposing the motion. *Id.* at 255. Courts will decline to draw a requested inference unless it is both reasonable and supported in the record. O*mnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); The moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Once the moving party has met this burden, the nonmoving party must "come forward with specific facts demonstrating that there is a genuine issue for trial." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." *Id.* (citing *Anderson*, 477 U.S. at 251-52.) The nonmoving party may not rely on "mere conclusions and allegations" to create a

genuinely disputed issue of material fact. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, the nonmoving party "must make a showing sufficient to establish any essential element of her cause of action for which she will bear the burden of persuasion at trial." *Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997).

On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements. See *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (referring to Local Rules 12(M) and (N), which were replaced by Local Rule 56.1). To adequately dispute a statement of fact, the opposing party must cite specific support in the record; an unsubstantiated denial or a denial that is mere argument or conjecture is not sufficient to create a genuinely disputed issue of material fact. *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008).

## II.    Introduction.

### A.    Background.

*1.  Forza's Claim for Breach of Contract.*

Plaintiff, Forza Technologies (now called LK Nutrition, but referred to herein as "Forza" or "Plaintiff") was founded in 2011 by Mia Scheid ("Scheid") and Lee Kemp ("Kemp"). Plaintiff asserts that it contracted with Premier Research Labs ("PRL") to manufacture and supply its newly created nutritional supplement product line. (Statement of Undisputed Facts ("SUF") 1-3; Tab A.) Plaintiff intended to market its products to high school and collegiate wrestlers. (SUF 4; Tab A.) The latter were subject to testing for banned performance-enhancing substances. (SUF 5; Tab A.) While there is no signed written contract, Plaintiff alleges in its Complaint that all material terms of the agreement are contained in written communications between the parties. (SUF 2-3; Tab A.)

3

During manufacture of Plaintiff's products, PRL discovered trace amounts of a banned substance, DHEA, in one of the four products (Force). (SUF 52; Tab Y.) PRL informed Plaintiff of the trace presence of DHEA and provided the corresponding lab report from HFL Sport Science prior to Plaintiff's acceptance of the goods. (SUF 52-53; Tabs Y and S.) Plaintiff continued to market and sell the products. (SUF 6; Tab B.) Plaintiff used the HFL Sport Science report in the promotion of its products, proclaiming that "HFL Sport Science World Anti-Doping Agency (WADA) accredited laboratory clears FORZA products." (SUF 43; Tabs T and U.) Plaintiff also marketed all four of its products as "clean and safe" for athletes. (SUF 45; Tab V.)

In its Complaint, Forza alleges that PRL breached a contract by tendering non-conforming goods, namely a product that contained trace amounts of DHEA.[1] (SUF 67; Tab A.)

### 2. Fitness Arts' / Mia Scheid's Counterclaims.

Scheid owns and operates a wellness center called Fitness Arts. (SUF 9; Tab D.) Fitness Arts provides a number of services, including exercise, corrective exercise, and nutrition and wellness consultations. (SUF 8; Tab D.) One of the services Scheid provides at Fitness Arts is a procedure called QRA™ ("Quantum Reflex Analysis"). (SUF 13; Tab D.) QRA is a proprietary kinesiology muscle testing procedure used to evaluate acupuncture points. (SUF 10; Tab D.) QRA was developed by PRL's founder, Third-Party-Defendant Robert Marshall ("Marshall"). (SUF 11; Tab D.) Prior to 2012, Scheid had been trained and certified to provide QRA services at Fitness Arts. (SUF 12; Tab D.)

Fitness Arts also sells nutritional supplements to its clients, including PRL products. (SUF 14; Tab D.) Scheid and Marshall were old friends, and prior to September of 2012 Marshall would occasionally refer clients to Scheid at Fitness Arts. (SUF 15; Tab D.) Marshall also gave Scheid a

---

[1] Plaintiff alleges that there are additional breaches. However, for the purposes of this motion, PRL is seeking summary judgment only as to breaches concerning alleged non-conformities of the goods at issue.

4

15% discount below wholesale on his PRL nutritional supplement products, which Scheid re-sold at retail to her clients at Fitness Arts. (SUF 16; Tab D.)

For her Counterclaims, Scheid complains that Marshall stopped giving her a discount on PRL products and stopped referring clients to her wellness center. (SUF 17; Tab E.) Scheid does not allege that Marshall or PRL were under any obligation to do either of those things. (*See generally*, *Id*.) Scheid also complains of a comment Marshall made in responding to a caller on his radio show, Healthline. (SUF 60; Tab E.) Marshall represented that he didn't know whether Scheid was "doing QRA" services anymore. (*Id*.)

### B. Choice of Law.

For Forza's breach of contract claim, the asserted agreement in this case was allegedly created through the parties' written communications; there is no evidence of a written contract. In the absence of a choice-of-law provision in a contract, Illinois courts apply the choice-of-law rules of the forum state. *Costello v. Liberty Mut. Fire Ins. Co.*, 876 N.E.2d 115 (Ill. App. Ct. 2007). Illinois uses the "most significant contacts" test to determine which law to apply. *Id.* Courts consider five factors in determining the applicable law in contract cases: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998). Here, Texas has the most significant relationship with the transactions at issue. PRL is located in Texas. And although Forza is located in Illinois, production of the products—the subject matter of the contract—occurred in Texas, and Forza's representatives traveled to Premier's Texas office in November 2011, and gave Premier a check. (SUF 18; Tab A.)

For Scheid's tort-based Counterclaims, Illinois law should apply. In tort actions, Illinois instructs the court to ascertain the forum with the 'most significant relationship' to the case."

5

*Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006) (*citing Esser v. McIntyre*, 169 Ill. 2d 292, 661 N.E.2d 1138, 1141, 214 Ill. Dec. 693 (Ill. 1996)). Under this test, "[f]our factors are supposed to guide the court's decision: '(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered.'" *Id* at 916 (*quoting Esser*, 661 N.E.2d at 1141). Here, the alleged injury occurred in Illinois.

### III. Presence of Trace Amounts of DHEA in One of Forza Products Did Not Breach Any Agreement Between Forza/LK and PRL.

Plaintiff claims that PRL not only agreed to manufacture supplements safe for consumption by athletes subject to testing for banned substances, but also agreed that the presence of any amount of a substance, no matter how minute the quantity, would constitute a material breach of the agreement. However no such term appears in the documents Plaintiff represents comprise its agreement with PRL. Moreover, the record shows that Plaintiff has consistently represented that the presence of the trace amount of DHEA detected in the FORCE product did not render the products non-conforming.

#### A. Forza/LK is precluded from contending that prohibition of trace presence of contaminants is a term of the contract.

In its pleadings, Plaintiff stated that the terms of its agreement with PRL are contained within the written communications between Plaintiff and PRL. (SUF 2-3; Tab A.) Plaintiff did not claim that any term in the agreement was agreed to verbally.

In its response to PRL's interrogatory requesting Plaintiff to "identify and describe every term" of the alleged agreement, Plaintiff claimed that PRL had agreed to terms including (1) testing of the products, (2) packaging and labeling of the products, (3) quantity of products to be manufactured, (4) price, (5) date of delivery and (6) purity / "no trace contamination" (SUF 20;

6

Tab C.) Consistent with the pleadings, Plaintiff identified e-mail communications between the parties where it alleged the terms could be found. (SUF 20; Tab C.) However, the e-mails cited by Plaintiff do not support Plaintiff's contention that PRL agreed that the products would be free of any and all trace contamination. (SUF 22-37; Tabs C and F-Q.) The documents present no contractual terms whatsoever. Many are merely links to websites unaccompanied by any documentation as to the contents of the sites or what portions of the sites comprise or support the alleged "terms." (*Id.*)

It is Plaintiff's burden to establish the terms of a contract with specificity. None of the foregoing documents identified by Plaintiff contain an agreement that Plaintiff's products would be 100% free of contaminants, banned or otherwise.

PRL expects that Plaintiff will argue that PRL's CEO and co-defendant Dr. Robert Marshall understood that Plaintiff intended to include a ban on even trace contamination in the agreement and that Marshall had verbally agreed to it. PRL vigorously disagrees with any such contentions. Regardless, Plaintiff is bound by both its pleadings and its interrogatory responses. It is a well-settled rule that a party is bound by what it states in its pleadings. *Soo Line R.R. v. St. Louis S.W. Ry.*, 125 F.3d 481, 483 (7th Cir. Ill. 1997). "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995); s*ee also, Freedom Nat'l Bank v. Northern Ill. Corp.*, 202 F.2d 601, 605 (7th Cir. 1953); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61-62 (1st Cir. 1992); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985). A plaintiff can "plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995). Courts in the

7th Circuit have applied this rule on numerous occasions in the past, *see, e.g., Warzon v. Drew*, 60 F.3d 1234, 1240 (7th Cir. 1995); *Conn v. GATX Terminals Corp.*, 18 F.3d 417, 419 (7th Cir. 1994), and "although the rule smacks of legalism, judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Soo Line R*, 125 F.3d at 483.

### B. Plaintiff admitted trace contamination did not render the goods non-conforming.

*1. Plaintiff admitted to PRL the Products Conformed to the Parties' Agreement*

On May 16, 2013, Scheid wrote PRL in an attempt to revoke Plaintiff's acceptance of the goods. In the letter, Plaintiff admits that the trace amounts of DHEA in the Force product did not render it nonconforming. (SUF 38-39; Tab R.) (*stating* "Although the amount of DHEA was not sufficient in itself to cause the products to be rejected....."). In contrast, Plaintiff stated that it was only after it began marketing the products to college wrestling programs that Plaintiff "discovered that the mere presence of a banned substance [prevented sales]." (SUF 40; Tab R.)

*2. Plaintiff Marketed the Goods as "Clean and Safe" for Athletes Subject to Testing for Banned Substances.*

Plaintiff was under no obligation to disclose the test results showing the presence of the trace amounts of DHEA in the Force product to the public. Plaintiff not only chose to use the test results to market its Products, it also marketed the products as "clean and safe." (SUF 45; Tabs V.) Plaintiff posted the test report on its web site to substantiate its claims that the products met WADA's standards. (SUF 41-44; Tabs S-U.) Even after receiving negative feedback about the trace DHEA, Plaintiff continued to market the test results. (SUF 44; Tab T.)

*3. Plaintiff's attorney, Ray Niro, took the position that the goods were conforming.*

On September 5, 2012, Becky Achen of the National Center for Drug Free Sport told Tim Weesner of Iowa State University that Forza "might be a good company to stay away from. If they have had a positive testing for contamination, even though it says it was a low level, is seems that would be a red flag." (SUF 47-49; Tabs U and W.) Forza's attorney Ray Niro responded with a letter to Ms. Achen demanding corrective action and asserting that her statements were "categorically false." (SUF 50; Tab X.) Mr. Niro confirmed that Plaintiff's "supplements have been carefully formulated, used by Olympic athletes *and have repeatedly passed the most rigorous drug tests available*. (SUF 51; Tab X (*emphasis added*).)

Accordingly, the record is consistent, uncontroverted and clear: the products produced by PRL, including the Force product, were of acceptable quality, both in terms of PRL's contractual obligations and for the targeted consumers. While Plaintiff may regret its decision to disclose the trace presence of DHEA in the Force product, that decision did not expand PRL's contractual obligations or make PRL responsible for the consequences.

## IV.  Plaintiff Is Barred from Recovery for Allegedly Non-Conforming Goods.

Plaintiff is barred from recovery of damages for the allegedly non-conforming goods as a result of Plaintiff's acceptance of the goods with knowledge of the presence of DHEA in the Force product. Under the Texas Business and Commerce Code, Plaintiff could not revoke its acceptance, and even if revocation were permissible, Plaintiff's attempted revocation was untimely as a matter of law. As a result, Plaintiff's remedies are limited to claims for breach of warranty. However, Plaintiff has not pled breach of warranty and has thus waived recovery for same.

### A.  Plaintiff's Acceptance of Goods With Knowledge of the Alleged Non-Conformity Precludes Revocation of Acceptance.

Texas Business & Commercial Code, Section 2.706(b) states:

> Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this chapter for non-conformity.

Prior to receiving the goods, Plaintiff was provided with the HFL Sport Science test results showing the presence of trace amounts of DHEA prior to delivery of the products. (SUF 53-54; Tabs S and A.) Plaintiff accepted the products with knowledge of the alleged non-conformity.

Plaintiff may argue that its revocation was justified because of a separate alleged non-conformity: a mistake in the nutrition data on some product labels, which Plaintiff alleges was PRL's responsibility. (SUF 66; Tab DD.) However, Plaintiff has never formally raised mislabeling as a breach of the parties' agreement. (SUF 7; Tab C.) Additionally, Plaintiff did not attempt to revoke its acceptance of the goods until after it filed the present action, and even then it did not identify the labeling issue as a ground in the May 2013 attempted revocation. (SUF 38 and 64; Tabs R and Z.) Texas Business & Commercial Code Section 2.608(c) imposes the same requirements for rejecting goods on a buyer seeking to revoke acceptance of goods. One such requirement is to particularize any alleged defects (Section 2.605(a)). Plaintiff should be bound by its choice to bring the present action rather than attempt revocation of its acceptance, and should not be allowed to re-write its revocation to include additional grounds.

**B. The May 2013 Attempted Revocation of Acceptance Was Untimely As a Matter of Law.**

Even if Plaintiff could have otherwise revoked its acceptance of the products, Plaintiff's May 2013 attempted revocation was invalid as a matter of law.

Section 2.608(b) states:

> Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Texas courts treat the question of what constitutes a "reasonable time" as a question of fact. However, it is undisputed that the sports nutrition supplements at issue were perishable goods and degraded over time, with an estimated shelf-life of two years. (SUF 56; Tab D.) Plaintiff did not attempt to revoke acceptance of the products until 10 months after delivery and with only 14 remaining in the product's shelf-life. (SUF 38 and 64; Tabs R and Z.) The natural decomposition of the goods during this period is a "substantial change in condition" that precludes revocation of acceptance.

### C. Plaintiff's Failure to Plead Breach of Warranty Precludes Recovery.

Under Texas law, a buyer's exclusive remedy after accepting defective goods and not properly revoking such acceptance is an action for breach of warranty. *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 812-13 (S.D. Texas 2013). See also: Texas Business & Commercial Code, Section 2-714(b). In the present action, Plaintiff failed to plead breach of warranty, either in its Complaint or Amended Complaint. (SUF 57; Tabs A and Z.) Over the course of this action PRL has conducted discovery and instructed its experts to address Plaintiff's claims for breach of contract and contractual damages, which are not coinciding to those of breach of warranty. For example, the measure of damages for breach of warranty is based on the difference between the goods' expected value and their value as delivered. Tex.

11

Bus. & Comm. Code, Section 2-718(b). The expert report of Plaintiff's damages expert Mr. Paul Duggan failed to address the value of the goods as-delivered. (SUF 58; Tab AA.) PRL's damages expert Mr. EJ Janik report noted that Mr. Duggan's report failed to include a mitigation or salvage analysis for the delivered goods. (SUF 58; Tab BB at A4.1, B31.) Plaintiff did not address the issue in Mr. Duggan's rebuttal report to Mr. Janik's report. (SUF 59; Tab CC.)

As discussed *supra*, Plaintiff is bound by what it alleged in its pleadings. In addition, a plaintiff may not amend its complaint through arguments in opposition to a motion for summary judgment. See: *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606-07 (7th Cir. 2000) and cases cited therein. Plaintiff's failure to plead breach of warranty further precludes any recovery with respect to the alleged non-conformities in the PRL products in question.

## V. Scheid's Counterclaims

Scheid's counterclaims for tortious interference with a prospective business expectancy and common law unfair competition fail as a matter of law because there is no evidence in the record to support them. (SUF 17; Tab E.)

### A. Tortious Interference with Prospective Business Expectancy.

Under Illinois law, the elements of a claim of tortious interference with a prospective business expectancy are "(1) [the plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.'" *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009) (alteration in original).

The Counterclaims are premised on a brief exchange on PRL's radio program, in which a caller inquired as to whether Ms. Scheid still provided QRA services and Dr. Marshall responded he didn't know, but that other practitioners were available. (SUF 60; Tab E.) There is no evidence that

12

the caller ever engaged QRA services from anyone, let alone ever sought a referral from PRL. Moreover, Marshall's statement to the caller on April 4, 2013 ("I don't know if she's doing QRA anymore . . . .") was entirely true: Marshall didn't know whether Scheid was still providing QRA services because Scheid admits that she had stopped participating in continuing education required for QRA practitioners. (SUF 61; Tab D.) There is no evidence of any additional alleged disparagements or misleading statements by PRL or Marshall. Even if the Counterclaim allegations are accepted for the purpose of this motion, they are insufficient to create a "reasonable expectation" by Ms. Scheid of entering into an actual relationship.

### B. Common Law Unfair Competition.

In her second Counterclaim, Scheid alleges that PRL and Marshall attempted to "destroy Scheid's and Fitness Arts' business" by: (a) misrepresenting Scheid's status as an active practitioner who is still in business, even though Scheid and Fitness Arts purchase substantial quantities of products from PRL; (b) making derogatory statements to potential customers about Scheid and Fitness Arts; (c) arbitrarily increasing pricing to Scheid and Fitness Arts to drive Scheid and Fitness Arts out of business; and (d) refusing to endorse and refer potential customers to Scheid and Fitness Arts even though they had done so in the past. (SUF 17; Tab E.)

The evidence confirms that Marshall did not misrepresent Scheid's status as an active practitioner who is still in business. He said he didn't "know if she's doing QRA anymore." As discussed *supra*, his statement was true, as Scheid had stopped participating in continuing education required for QRA practitioners in 2012. Similarly, there is nothing derogatory about the statement "I don't know if she's doing QRA anymore."

The Counterclaim also alleges that subsequent to Plaintiff's institution of the present action, Marshall directed PRL to eliminate a discount it had provided Fitness Arts on PRL brand supplements and stopped referring clients to Scheid. However, the undisputed record reflects that

13

Marshall in fact eliminated the discount and stopped referrals *prior* to the institution of the present action. (SUF 63; Tab D.) Moreover, Scheid has neither alleged nor provided any evidence that there is contract or obligation that would prevent PRL from eliminating the discount and ceasing referrals, making these allegations irrelevant. Scheid has not asserted breach of contract.

### C. There is No Evidence in the Record That Scheid Suffered Any Harm as a Result of Marshall's Actions.

Moreover, even if the exchange on the radio show could support the Counterclaims, the record is devoid of any evidence as to the amount of harm suffered by Scheid or Fitness Arts. Nor did Plaintiff's damages expert, Mr. Duggan, offer expert testimony with respect to damages for either counterclaim. (SUF 65; Tab AA.) Accordingly, summary judgment of no liability should be entered in favor of Counterclaim defendants.

### VI. Conclusion.

Plaintiff has alleged breach of a written contract in which all material terms are contained in writings between the parties. It is beyond dispute that the contract, as defined by Plaintiff, does not require 100% purity, without even trace amounts of contamination. Therefore, a trace amount of DHEA, which poses no health risk to consumers, is not a breach. Plaintiff accepted the products with knowledge of the trace DHEA. Plaintiffs marketed and sold those same products as WADA "cleared" and "clean and safe." Therefore any attempt to revoke their acceptance of those goods is ineffective and untimely as a matter of law. Because Plaintiff has not pleaded Breach of Warranty, any claim for damages under a warranty theory must fail. Finally, Both of Scheid's counterclaims fail because there is no evidence of interference with any expected business relationship and no evidence that Marshall made any derogatory or misleading statements. Moreover, Scheid does not allege, and the record does not reflect, that Marshall had any obligation to refer clients to Scheid or give her any discount on PRL products. Therefore,

PRL and Marshal respectfully request that their Motion for Summary Judgment on all matters raised therein by granted.

Date: November 4, 2015  /s/ Ryan M. Kaiser

        Rakesh M. Amin
        Ryan M. Kaiser
        Jonathan J. Krit
        AMIN TALATI & UPADHYE, LLC
        55 W. Monroe St., Suite 3400
        Chicago, Illinois 60603
        Telephone: (312) 784-1065
        E-mail: rakesh@amintalati.com
        E-mail: ryan@amintalati.com
        E-mail: jonathan@amintalati.com


        Attorneys for Defendants

## CERTIFICATE OF SERVICE

  I hereby certify that on the 4th day of November 2015, I caused a true and correct copy of the foregoing document to be served on the following parties via the Court's ECF system and electronic mail:

      Raymond P. Niro (rniro@nshn.com)
      Olivia T. Luk (oluk@nshn.com)
      Paul Vickrey (vickrey@nshn.com)
      NIRO, HALLER & NIRO
      181 W. Madison, Suite 4600
      Chicago, IL 60602


      /s/ Ryan M. Kaiser
      Ryan M. Kaiser
      AMIN TALATI & UPADHYE, LLC
      55 W. Monroe St., Suite 3400
      Chicago, Illinois 60603
      Telephone: (312) 784-1065
      E-mail: rakesh@amintalati.com
      E-mail: ryan@amintalati.com
      E-mail: jonathan@amintalati.com